Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

FILED - USDC -NH
2022 NOV 3 PM 3:53

# UNITED STATES DISTRICT COURT
for the
District of New Hampshire

_____ Division

| | |
|---|---|
| Corey Cutting Jordan-Rutledge | Case No. _____ |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | Jury Trial: *(check one)* ✓ Yes ☐ No |
| -v- | |
| Liberty Mutual Insurance Company | |
| *Defendant(s)* | |
| (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | |

## COMPLAINT FOR A CIVIL CASE

### I.   The Parties to This Complaint

  **A.   The Plaintiff(s)**

  Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

  | | |
  |---|---|
  | Name | Corey Cutting Jordan-Rutledge |
  | Street Address | 32 Cromwell Street |
  | City and County | Kittery, York County |
  | State and Zip Code | ME, 03904 |
  | Telephone Number | (207)-208-9219 |
  | E-mail Address | warpousa@aim.com |

  **B.   The Defendant(s)**

  Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | Liberty Mutual Insurance Company |
| Job or Title *(if known)* | (Registered Business Agent Address for NH - Concord Corp.Serv |
| Street Address | 10 Ferry Street, Suite 313 |
| City and County | Concord, Merrimack County |
| State and Zip Code | NH 03301 |
| Telephone Number | (800) 927-9800 (Registered Agent) | (603) 749-4418 (Dover, NH |
| E-mail Address *(if known)* | csrcontact@cscinfo.com  (Registered Agent) | subpin@libertymut |

Defendant No. 2

Name
Job or Title *(if known)*
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

Defendant No. 3

Name
Job or Title *(if known)*
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

Defendant No. 4

Name
Job or Title *(if known)*
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question     ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

   a. If the plaintiff is an individual

   The plaintiff, *(name)* Corey Cutting Jordan-Rutledge , is a citizen of the State of *(name)* Maine .

   b. If the plaintiff is a corporation

   The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

   a. If the defendant is an individual

   The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

    b.    If the defendant is a corporation

The defendant, *(name)* Liberty Mutual Insurance Company, is incorporated under the laws of the State of *(name)* New Hampshire, and has its principal place of business in the State of *(name)* Massachusetts.

Or is incorporated under the laws of *(foreign nation)* _____,

and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

The total of backpay and compensatory damages would exceed the sum of $75,000, totaling between roughly $120,000 and $150,000.

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

• Starting in July/August 2018, my former employer, Liberty Mutual Insurance Company neglectfully failed extend reasonable accommodations denying me the same treatment requested by me and my doctor, while at the same time, extending this very treatment for other employees working directly with me performing the same job duties.
• From July/August 2018, my former employer also encouraged an environment of discrimination and hostility towards myself as a "member of a protected class", having asked for additional time to complete tasks (extended to other employees, but denied in my case); the above caused significant and lasting emotional distress for me and my family, necessitating compensatory damages  (continued in attachment)

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Per above, "...The total of backpay and compensatory damages would exceed the sum of $75,000, totaling between roughly $110,000 and $150,000..." That would be $30,000 in back pay while out of work, same amount of compensation for emotional distress, plus anywhere from $50,000 to $100,000 in punitive damages. As will be examined in evidence, Liberty Mutual, aware of my diagnosed language/learning disability, willfully cites its own claims of verbal statements with no actual written record or recording of them ever having originated from my side. Contemptuous conduct by any reasonable standard!  As a matter of perspective (without exploring legal argument) in the case of Tobin v. Liberty Mutual Insurance Company, the plaintiff (Tobin) received $1,355,979 in

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 11/03/2022

Signature of Plaintiff

Printed Name of Plaintiff   Corey Cutting Jordan-Rutledge

### B. For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

Statement of Claim continued…

- I am a person with disabilities (specifically mental impairments – Language-based Learning Disorder and Attention Deficit Disorder, combined type); in early March, 2017, I applied to work as a UI Developer 80596 at Liberty Mutual Insurance Company and interviewed for the position (for which I possess tangible evidence); on March 13, 2017 I was extended an offer of employment, however, the title and code for the job shifted to "Software Developer 80594" on the electronic cover letter (it is revealed in my personnel file, this was likely due to a human/clerical error on the part of Liberty Mutual);

- Due to the clerical error, or "glitch", role I started with was different than the job for which I applied; I attempted to sort out the issue with Human Resources, however, efforts proved moot due to a number of jobs getting moved around or eliminated by July/Aug 2017; I, along with others, were assigned to at least two different projects and teams in 2017, entailing having to physically move three times; despite the disruptions, I learned in January 2018, that I missed the score of 8 out of 15 by just one point (having earned a 7 out of a possible 15, where an 8 would have been satisfactory); my manager at the time acknowledged the disruptions, and expressed support that I receive "coaching" in 2018; no action on my part is taken informing my former employer of a diagnosis of ADD/ADHD from many years ago (or any other potential diagnoses), because at the time there was nothing about the job I was placed in to have me believe I would be evaluated specifically on my rate of learning, attention span or communicative ability, however, by March of 2018, teams were realigned and reassigned a third time, and this time the new role I was placed in differed even more than the first two roles I was placed in (where according to documentation, I was apparently placed in the first role due to a "glitch"); in short order I was asked to perform technical tasks for which I had only received one week of training at the time, however, I was soon thereafter working with an individual on a technical project performing the exact same work, but with a significant difference: the individual received continuous hands-on technical coaching for many hours out of the day, but this was apparently not available to me; by June or July 2018 I received verbal and written warnings that I would specifically need to "learn quickly" and by late July 2018 received official diagnoses of a Language-Based Learning Disorder (LBL) and ADD/ADHD (combined type) – with which I had already been diagnosed as a teenager; with no doubt as to the nature of my disability, and at the request of my doctor via fax, I worked with Liberty Mutual's ADA channel to get the same technical coaching the other member on my team received (as well as that received by hundreds on other teams), however, I would later learn that the new manager I'd been assigned had written back to the ADA she "did not expect to have to teach" me how to code, apparently based on the job code assigned to me at my time of hiring from more than a year before (which was, in the first place, a glitch); in effect, Liberty Mutual flouted protections and accommodations available to members of protected classes (enforceable by the ADA) and made their own protected classes; to do so, Liberty Mutual assigned temporary job codes to those whose previous job codes had been eliminated, effectively granting "temporary job codes" to those performing my exact same essential job functions for nine months or longer before automatically "converting" those individuals to either my job code or a job code in line with a more senior pay grade (during which time, these individuals had dedicated technical coaches to help them "learn quickly" – as is documented); Liberty Mutual ignored my doctor's faxed requests (and my requests) for hands-on coaching early in the process, only addressed requests such as "breaks" (already available to me and other team members as "standard" treatment), while issuing performance warning and treating me unfavorably compared to the individual sitting across from me literally performing the same job (who was coached, while also paid a fulltime salary greater than mine) – during which time, I was subjected to verbal harassment by certain members of the team for characteristics directly attributable to diagnosed impairments, in addition to having to lose valuable work hours during the day on the phone with the ADA; the individual working for Liberty Mutual in the ADA department claimed not to understand the faxed requests for "hands-on training" and also implied this would not be possible – by January, 2019, I was again been issued a sub-standard performance review, citing issues with communication and an

1

inability to "learn quickly" based on subjective team votes (which did not measure my ability to "learn" on based on any specific quantitative criteria – and not every member necessarily felt I learned too slow); by this time, Liberty Mutual had been long since aware of a diagnosed learning disability, had been requested to extend the same treatment afforded to another team member (and hundreds of others), but failed to do so; this is documented, and is in clear violation of Title I of the Americans with Disabilities Act of 1990.

- To create the appearance my doctor's requests for coaching were granted, on January 31st, an email was sent making mention of words I allegedly used (which I deny), to have it appear double the coaching and hands-on training I had asked for would be granted (entirely misleading, and contemptuous), since I had already had to "haggle" by phone for six or seven months to get hands on training by phone, while unable to get suitable coaching and training (subjected therefore to an inherently inferior standard of treatment to do the same job as colleagues doing performing the same essential functions); no reasonable individual would believe an individual with known learning impairments placed in the wrong role due to a clerical error (swept up in 3 corporate realignments and 3 further role shifts) would require anything less than the same standard other individuals in the same or similar roles would require anything less than was as extended to those without impairments – which was nine months of paid coaching and three months of paid classroom training; no language ever originated from my side (or my doctor's side), requested only 30 days of training specifically; regardless of performance, past or present, poor, fair or superior, any individual performing the same essential job duties as the person across from them should have access to the same training opportunities – and in cases where individual as a "member of a protected class based on a disability" asks for the same training, the protections of the law mandate "reasonable accommodation"; as documented, I was treated as "inferior", which Liberty Mutual has attempted to justify based on transient/temporal "job codes" to lend the impression those getting coaching had different jobs (which they "did" prior to realignment, however, this would have been irrelevant starting the nine month period when they worked with me in a fulltime capacity doing the same work – before automatically receiving what would have been my exact job code at the time, or a similar code denoting a "Senior" version, without having to apply for a different role, but nevertheless able to enjoy hands-on coaching before the "switch"); ultimately, Liberty Mutual didn't honor its written "pledge" to extend 30 days of hands-on coaching, due to illness of other team members at the time, and well as a serious illness I suffered while working (which caused a singular syncopal episode – fainting – and landed me in the hospital); I received at most 5, 6 or 7 formal hands-on "coaching" sessions, compared to nine months of coaching enjoyed by other employees performing my essential job duties.

- Liberty Mutual terminated my employment on March 19, 2019 in Dover, NH, citing the reason as "performance"; in the performance, characteristics adversely affected by mental impairments known to my former employment are mentioned (specifically ability to learn and communicate); notwithstanding the above, per New Hampshire Law, an employer does not need a reason to terminate per "Employment at Will"; this is not a charge about termination with or without cause "per se" – the charge is that my former employer failed to extend reasonable accommodations because it admittedly only offered 30 days of hands-on training it its own words; if the standard for others performing the same or similar roles is nine months, how then is 30 days of training a "reasonable accommodation" for individuals known to suffer mental and learning impairments? That said, an aspect of the charge is that my former employer's decision to terminate was wrongful due to its failure to first extend "reasonable accommodations" since it was more than knowledgeable concerning the nature of my diagnosed impairments.

- Liberty Mutual Discrimination based on conditioning certain qualities of a "coding" job based on written and verbal communication style known to be directly affected by impairments; whereas in the past as in the present, I am able to maintain a similar "coding" jobs that do not directly evaluate or assign "grades" to verbal and written communication or general ability to "learn quickly" (without defining exactly what it is that needs to be quickly learned and accomplished); penalizing me for subjective criteria not essential to core responsibilities of a my role, went contrary to my doctor's written instructions, but

my former employer did not heed the fax and did so with impunity, in effect fostering a systemic culture on-the-job discrimination and harassment, starting in the Summer of 2018 and for the duration of my tenure.

•     I have suffered and continue to suffer damages, including but not limited to, lost wages, lost earning capacity, emotional distress, humiliation, inconvenience, and loss of enjoyment of life; I therefore seek all damages to which I am entitled.



# Corey Jordan-Rutledge v. Liberty Mutual

**219-2022-CV-00008**
*Timeline of Events*

**Statement of Claim - *Timeline***

## Top row (above timeline)

**Early January 2017** – Complainant/Plaintiff (**CJR**) first applies for position of **UI Developer 80596** with resume clearly suitable for job description (See *"Request to Appeal Finding of 'No Probable Cause'"* (RAFNPC) Brief, Exhibit IV, pp 23-25.

**April/May 2017** – **CJR** learns job duties expected by **LM** differ from those on UI Developer Job Desc.; **LM** offers **CJR** 1 week of paid training to learn to be a React.js Developer… Performance improves, but plans are soon made to transfer entire dept.

**August – December 2017**; **CJR** (and others) are reassigned to QBE project in Dover, NH; re-transferred then to Portsmouth NH; on new team, CJR is expected to learn Gherkin/Cucumber; after 3 or 4 paired sessions, QBE is ended.

**March 2018** – **CJR** assigned to new team in Portsmouth NH on eClaims; new project is ended after 1-2 weeks; CJR & new team reassigned to another new project called "Customer First" requiring knowledge of Java programming.

**August – December 2018** – Starting Aug, Neuropsychologist sends 1st of 3 faxes sent out over 5—month period (Aug/Oct/Dec), requesting individual training (requested by **CJR** to ADA Dept. via phone) *

**February 25, 2019** – **CJR** suffers singular syncopal episode while working from home during a bout with acute Norovirus and is transported to York Hospital by ambulance; 3 to 5 days of work are missed during 30-day hands-on training.

**March 19, 2019**, **CJR** is discharged by **LM**, citing reason as "Performance" (due to impairment), having failed to extend 1.) reasonable accommodations 2.) equitable treatment

## Timeline labels (above line)

Impact of Customer Centric Agile Development "Lift & Shift" -Exeter, NH

No apparent team or project, other than one Hackathon Project, etc. -Portsmouth, NH

Customer First Project (CFA) -Portsmouth, NH, Exeter NH, Dover, NH

\* Starting Aug 8, 2018, ADA asks CJR's new manager about additional training/coaching options. New Manager's written response, Aug 8: "…I don't expect to have to teach him how to code…", per Personnel file (also meshes w/ verbal answer, i.e. "no continuous hands-on training" for role); in November, 1 more week of Java class training is allowed – but no longer!

## Timeline labels (below line)

Quote, Bind, Endorse, a.k.a. "QBE" (Sunset in Fall, 2017) -Dover, NH · Portsmouth, NH

Brief eClaims project – ended within weeks -Portsmouth, NH

CFA transferred out of USCMIT to GRM

\*\* On January 18, 2019, Performance Review for 2018 is discussed; performance degraded significantly, compared to previous year, as several criteria used in text of Performance Review were directly linked to characteristics of an Impairment of which LM had been made aware at least six months prior, during which time sufficient accommodations were not granted.

## Bottom row (below timeline)

**March 13, 2017**– Respondent/Defendant (**LM**) extends **CJR** position of UI Developer 80596… in LM USCMIT DIGITAL & DISTRIBUTION DEPT; offer is accepted; however, job code and title appear "switched" to **80594 Software Developer** in electronic offer; please refer to (RAFNPC) Brief, Exhibit I, pp. 14-17.

\*CJR Never Submitted Resume and/or Cover letter intended for role of Software Developer, and/or React.js Developer*

**July/Aug 2017**– CJR's UI-role of learning to be a React.js Developer is "lifted and shifted" from Exeter, NH to Boston, MA (along with many other roles in dept.); CJR (along with other employees) are offered possibility of keeping role on existing project, provided physically relocating to Boston, however, CJR is unable, having only recently relocated to ME/NH Seacoast from Greater Boston Area; CJR, and others are informed to keep employment, retraining on a new team and reassignment to new project will be necessary.

**Jan/Feb 2018** – CJR, along w/ many other employees await reassignment after QBE (sunset/retired in roughly October and/or early November 2017); other than 1 hackathon held in November 2017, unclear what work is left for CJR (and others) in USCMIT DIGITAL & DISTRIBUTION Dept. Final Performance Review for 2017 (also early 2018?) is 1 point less than satisfactory, but LM acknowledges *"…several team and technology changes took place over the course of 2017…"*, making **CJR's** onboarding challenging; see (RAFNPC) Brief, Exhibit VIII, pp. 40 – 41.

**April—July 2018** – CJR is allowed 1-week of paid Java training; meanwhile, others in USCMIT Digital & Dist. are allowed to attend paid training in Java for 3 months (or longer); **CJR** is informed in late June/early *July he will be expected to learn [JAVA] quickly, and that learning quickly will now be necessary to be successful* (never listed as requirement for any role!); in parallel, **CJR** is diagnosed with a Language/Learning Impairment (already diagnosed with ADHD in the 1990s); CJR notifies appropriate channels; Job is transferred to GRM US Dept. (along w/ team).

**Jan 18 – 30, 2019** – Following Performance Review for 2018**, after at least 3 faxes and significant time on the phone during workday hours over many months (5+), original "accommodation" of paired programming requested (i.e. "hands-on training") is at last granted for 30 days. (NOTE: this – along with extra time to complete tasks – hadn't been granted for previous 5-6 months, though as early as early as April 2018, this was not only allowed, however, standard and seemingly mandatory for Glen – another member on CJR's team that physically worked alongside him on same code project during same work hours.)

**March 13, 2019** CJR's father suffers mild stroke during a ski-trip, necessitating early departure from work, curtailing "hands-on training" in progress; due to illnesses of other team members (coupled with CJR's hospitalization and father's health emergency), only five or six "hands-on" training sessions take place within the 30 (thirty) days of expected training.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS**

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 16D-2019-00307 to the District Director at Judy Keenan, 33 Whitehall St 5th Floor

New York, NY 10004.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 08/08/2022

To: Corey Jordan-Rutledge
32 Cromwell St.
Kittery, ME 03904

Charge No: 16D-2019-00307

EEOC Representative and email:    Amon Kinsey
Supervisory Investigator
amon.kinsey@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 16D-2019-00307.

On behalf of the Commission,

Digitally Signed By: Judy Keenan
08/08/2022

Judy Keenan
District Director

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ✓ **Only one** major life activity need be substantially limited.
- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

Enclosure with EEOC Notice of Closure and Rights (01/22)

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at* http://www.eeoc.gov/laws/types/disability_regulations.cfm.